FILED

2007 Jan-17  PM 04:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **RALPH W. TIMBERLAKE,**      ) | |
| ) | |
| **Plaintiff,**      ) | |
| ) | |
| **v.**      ) | **Case No.:5:05-CV-1398-VEH** |
| ) | |
| **LINDA M. SPRINGER,**      ) | |
| **Director, United States**      ) | |
| **Officer of Personnel Management,**      ) | |
| ) | |
| **Defendant.**      ) | |

## <u>MEMORANDUM OPINION</u>

Before the court are: (1) a Motion for Summary Judgment filed by Defendant

Linda M. Springer, Director of the United States Office of Personnel Management

Agency ("OPM") (doc. 23); and (2) a Motion for Summary Judgment filed by *pro se*

Plaintiff Ralph W. Timberlake (doc. 34).  These motions have been briefed and were

the subject of a hearing before the undersigned on January 5, 2007.  For the reasons

discussed herein: (1) Defendant's Motion for Summary Judgment is due to be

**GRANTED IN PART AND DENIED IN PART**; and (2) Plaintiff's Motion for

Summary Judgment is due to be **GRANTED IN PART AND DENIED IN PART**.

## I.      Plaintiff's Amended Complaint

When reasonably construed, Timberlake's Amended Complaint (doc. 11)

asserts three claims against OPM in that: (1) OPM failed to give Timberlake access to medical records pertaining to him in violation of the Privacy Act, 5 U.S.C.A. § 552a; (2) OPM failed to allow Timberlake to amend records pertaining to him in violation of the Privacy Act; and (3) OPM failed to disclose to Timberlake his medical records following Timberlake's request for those records pursuant to the Freedom of Information Act, 5 U.S.C.A. § 552.  Timberlake requests that this court direct OPM to produce Timberlake's records, require OPM to allow Timerlake to make "corrections" to those records, "fine" OPM $250,000.00,[1] award damages in the amount of $250,000.00 for "pain and suffering," and award Timberlake his costs associated with this litigation.

The only defendant named in the body of the Amended Complaint is OPM. The court takes note that Timberlake alleges that "the United States Postal Service and its agents unlawfully removed [him] from [his] lawful employment on May 10, 1999, because of [his] [sic] race, (Black), age, (over 40), sex (male)" and also asserts that his employment with the United States Postal Service was terminated as retaliation for Timberlake's complaints filed with the Protection Board, the National Labor Relations Board, and the Equal Employment Opportunity Commission against

---

[1]The court cannot award "fines" pursuant to either the Privacy Act or the Freedom of Information Act.

his employer.  However, the United States Postal Service was never named as a party

nor served.  Therefore, these issues are not before this court.

## II.    Facts[2]

Plaintiff was removed from his position of employment as a mail processor

with the United States Postal Service in Huntsville, AL on August 21, 2001, on a

charge of medical unsuitability to perform his job duties.  He appealed his termination

to the Merit Systems Protection Board ("the Board").  (*See* Def.'s Ex. A, Order and

Memorandum Opinion of Judge C. Lynnwood Smith, dated September 13, 2002, pp.

3 - 4).

In *Timberlake v. United States Postal Serv*., 94 M.S.P.R. 231, 237 (2003), the

Board ordered the Postal Service to initiate an agency-filed disability retirement

application for the plaintiff under the Federal Employees' Retirement System

("FERS") in cooperation with OPM, on the grounds that Timberlake had been subject

to a removal decision based on disease or injury and he otherwise met all remaining

criteria in 5 C.F.R. §§ 844.202(a)(1)-(5).  Notably, the Board determined that

Timberlake was medically incapable of making a decision to file an application on

---

[2]The facts of this case have been conceded to by Timberlake and are gleaned from the
statement of facts contained in Defendant's brief in support of its Motion for Summary Judgment
(doc. 24).  *See* FED. R. CIV. P. 56(e).  Timberlake, both in his response to Defendant's Motion for
Summary Judgment (doc. 43) and in his Motion for Summary Judgment (doc. 34), states that
OPM acknowledges that it has not complied with Timberlake's request for production of
documents.

his own behalf, that he did not have a personal representative or guardian, and that

no immediate family member of Timberlake's was willing to file the application for

him.  (Def. Ex. B, Hines Declaration, ¶ 1).

In a separate decision, *Timberlake v. United States Postal Serv.*, 95 M.S.P.R.

656, 658-59 (2004), the Board sustained Timberlake's termination for medical

unsuitability.  The Board held that the Timberlake's removal did not constitute

harmful procedural error and was not motivated by unlawful discrimination on the

basis of race, age, disability, or reprisal. *See id.*

The United States Postal Service, on Timberlake's behalf, submitted a

disability retirement application to OPM, who approved the application.  OPM's

records indicate that, although Plaintiff initially resisted furnishing required

supporting documents for his disability retirement application, including proof of

application for Social Security disability insurance required by 5 C.F.R. §

844.201(b)(1), he eventually complied with these requirements and is now in receipt

of his annuity.  As of June 2006, plaintiff's gross monthly annuity is $1,368.00, and

his net monthly annuity is $957.14.

On November 5, 2003, Timberlake filed a written request with OPM pursuant

to the Freedom of Information Act and the Privacy Act, requesting copies of his

retirement case file, including any medical evidence submitted by the Postal Service

in support of his application for disability retirement. (Def.'s Ex. B, Hines Declaration, ¶ 6).   In a November 18, 2003 response, OPM's Disability, Reconsideration and Appeals Group partially disclosed the requested records, but advised Plaintiff that it could not immediately disclose certain medical records. (Def.'s Ex. B, Hines Declaration, ¶¶ 7-9).  The response letter stated that under the "prudent physician rule ... [t]his medical documentation will be disclosed only to a licensed physician designated in writing for that purpose by the individual or by their [sic] representative." (*Id*.).  The response letter invited Timberlake to submit the name and address of a designated physician to receive the withheld medical records.

Timberlake did not furnish the name of a physician to receive his medical records.  Instead, Plaintiff filed an appeal with OPM's General Counsel on December 12, 2003, pursuant to OPM's Freedom of Information Act appeal regulations, codified at 5 C.F.R. § 294.110(a), and OPM's Privacy Act appeal regulations, codified at 5 C.F.R. § 297.207(c)(2). (Def.'s Ex. B, Hines Declaration, ¶ 10).

On January 13, 2004, OPM's General Counsel issued a final decision sustaining the Board's initial decision not to disclose Timberlake's medical records to anyone other than a designated physician, and informed Timberlake of his right to seek judicial review in United States district court.  (*Id.*)

Rather than filing suit in district court, Plaintiff initiated EEO counseling on

January 1, 2004, pursuant to 29 C.F.R. § 1614.105, alleging that OPM's decision on

his Freedom of Information Act and Privacy Act requests constituted discrimination

on the bases of race, sex, age, reprisal, and disability.  (*See* Def.'s Ex. D, ¶ 1).

Following a March 17, 2004 final counseling interview, Timberlake filed an EEO

complaint pursuant to 29 C.F.R. § 1614.106.[3]  On October 12, 2004, OPM issued a

final agency decision under 29 C.F.R. § 1614.110(b), dismissing Plaintiff's complaint

for failure to state a claim for which relief could be granted, in that Timberlake failed

to allege that OPM's Freedom of Information Act and Privacy Act determinations

were adverse personnel actions or that he suffered a present harm or loss with respect

to a term, condition, or privilege of employment.  *See Timberlake v. Office of Pers.*

*Mgmt.*, EEO Case No. 04-16, slip op. at 1-3 (OPM Oct. 12, 2004).

On November 16, 2004, Timberlake appealed OPM's decision to the EEOC

pursuant to 29 C.F.R. § 1614.401(a). OPM opposed Timberlake's position on appeal.

The EEOC affirmed OPM's final agency decision finding that "the complaint fails to

state a claim under the EEOC regulations because complainant failed to show that he

suffered harm or loss with respect to a term, condition, or privilege of employment

for which there is a remedy."  *Timberlake v. Office of Pers. Mgmt.*, Appeal No.

01A50942, 2005 WL 439933, at *1 (EEOC Feb. 16, 2005).  The EEOC subsequently

---

[3]The EEO complaint was filed on March 29, 2004.

denied the plaintiff's petition for reconsideration.  *Timberlake v. Office of Pers. Mgmt.*, Request No. 05A50652, 2005 WL 819535, at *1 (EEOC  Mar. 30, 2005).

Timberlake ultimately filed the instant action in the United States District Court for the Northern District of Alabama seeking injunctive relief ordering OPM to provide the requested documents, and damages.

The court takes note that, at the January 5, 2007, hearing, OPM acknowledged that it refused to provide all of the documents requested by Timberlake.  OPM's position is that, as a matter of law, it is obligated to surrender the withheld documents only to a designated physician.  However, at the hearing, OPM stated that it has now, pursuant to the court's October 31, 2006, Order, given Timberlake all documents in their possession.  Timberlake did not dispute OPM's statement except that he requested, but did not receive, a copy of his consent to the release of his medical records.  OPM admitted that no such document exists.  Timberlake agreed that he never signed a consent form.

## II.     Standard of Review

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party has met its burden, Rule 56(c) requires the nonmoving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant.  *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its

initial burden depends on whether that party bears the burden of proof on the issue at trial.  See *Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)).  If the moving party bears the burden of proof at trial, then it can meet its burden on summary judgment only by presenting positive evidence that demonstrates the absence of a genuine issue of material fact; i.e., facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for a directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of any evidence in the record in support of a judgment for the nonmoving party on the issue in question.  This method requires more than a simple

statement that the nonmoving party cannot meet its burden at trial but does not

require evidence negating the nonmovant's claim; it simply requires the movant to

point out to the court that there is an absence of evidence to support the nonmoving

party's case. *Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden

by using this second method, the nonmoving party may either point to evidence in the

court record, overlooked or ignored by the movant, sufficient to withstand a directed

verdict, or the nonmoving party may come forward with additional evidence

sufficient to withstand a directed verdict motion at trial based on the alleged

evidentiary deficiency.  However, when responding, the nonmovant can no longer

rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*,

518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561

(1992)).  Unless the plaintiff, who carries the ultimate burden of proving his action,

is able to show some evidence with respect to each element of his claim, all other

issues of fact become immaterial and the moving party is entitled to judgment as a

matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Bennett v.

Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990).  The Eleventh Circuit has

explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to
> establish a prima facie case.  "In such a situation, there can be 'no
> genuine issues as to any material fact,' since a complete failure of proof

concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986).

## III. Discussion

There is no dispute that Timberlake made a request, pursuant to the Privacy Act and the Freedom of Information Act, for his retirement case file, including any medical evidence submitted by the Postal Service in support of his application for disability retirement, and that OPM refused to provide him with a copy of some of his medical records.[4]

### A. Timberlake's Privacy Act "Access" Claim

Timberlake asserts that he was denied access to certain of his medical records in violation of the Privacy Act. At the January 5, 2007, hearing, OPM conceded that Timberlake's Privacy Act claims are timely.

---

[4]The court notes that, in response to an Order of this court (doc. 40), OPM has now provided Timberlake with a copy of all the requested records. See docs. 41, 42.

OPM argues that the agency acted properly in that it did not deny Timberlake

access to the withheld medical records under 5 U.S.C.A. § 552a(d)(1); rather, OPM

applied allegedly appropriate special procedures in requiring Timberlake to designate

a physician to receive the records pursuant to 5 U.S.C.A. § 552a(f)(3) and OPM's

Privacy Act regulations, 5 C.F.R. § 297.205 and § 841.108(a)(2).  As a governmental

agency that maintains records, OPM is required to "establish procedures for the

disclosure to an individual ... of medical records, including psychological records,

pertaining to him."   5 U.S.C.A. § 552a(f)(3).   OPM's Privacy Act regulation

governing access to medical records, promulgated pursuant to § 552a(f)(3), states:

> When a request for access involves medical or psychological records
> that the system manager believes requires [sic] special handling, the
> requester should be advised that the material will be provided only to a
> physician designated by the data subject. Upon receipt of the
> designation and upon verification of the physician's identity, the records
> will be made available to the physician, who will have full authority to
> disclose those records to the data subject when appropriate.

5 C.F.R. § 297.205.  OPM's Privacy Act regulation, related to the disclosure of

medical records used by the agency to support disability claims, directs that records

are to be disclosed to the individual to whom the information pertains "except that

medical evidence about which a prudent physician would hesitate to inform the

individual will be disclosed only to a licensed physician designated ... by the

individual." 5 C.F.R. § 841.108(a)(2).

In OPM's brief in support of it Motion for Summary Judgment, OPM notes that case law from the D.C. Circuit does not support OPM's position on the merits of Timberlake's Privacy Act access claim. In *Benavides v. U.S. Bureau of Prisons*, 995 F.2d 269, 272 (D.C. Cir. 1993), the court held that a Justice Department regulation, essentially identical to OPM's regulations, that required an individual seeking production of medical records under the Privacy Act to designate a physician to receive the medical records and vesting that physician with the authority to make the ultimate decision as to whether the individual would be afforded access to the medical records was *ultra vires* in that it exceeded the purpose of § 552a(f)(3) and created an extra-statutory Privacy Act exemption. In addition, this court has identified a case decided by the Seventh Circuit Court of Appeals that reached the same holding as reached in *Benavides*, that is, regulations which allow an agency to disclose records to a third party who has complete discretion to disclose or to withhold the requested information do not comply with the Privacy Act. *See Bavido v. Apfel*, 215 F.3d 743 (7th Cir. 2000).

There is no binding precedent in the Eleventh Circuit on this issue. However, this court is persuaded by the holdings in *Benavides* and *Bavido*. The undersigned finds that 5 C.F.R. § 297.205 and 5 C.F.R. § 841.108(a)(2) create an extra-statutory Privacy Act exemption and thus offend § 552a(f)(3), which directs agencies to

establish procedures for the disclosure of medical records to a requesting individual.

In addition, OPM's reliance on § 297.205 and § 841.108(a)(2) in denying Timberlake

access to his medical records constitutes noncompliance with 5 U.S.C.A. § 552a(d)(1)

in that OPM has failed to provide Timberlake a copy of his requested medical records

as required by the Privacy Act.

Timberlake's Motion for Summary Judgment as to the Privacy Act access claim

is due to be **GRANTED**.  OPM's Motion for Summary Judgment is due to be

**DENIED** as to that specific claim.  During the January 5, 2007, hearing, OPM stated

that it has now provided Timberlake with all documents that are in OPM's

possession.  Accordingly, the court need not now direct OPM to produce those same

documents pursuant to § 552a(g)(3)(A).  In its discretion, the court declines to award

Timberlake costs pursuant to § 552a(g)(3)(B).

Timberlake's Amended Complaint contains a request for monetary damages.

The sole provision of the Privacy Act that allows for money damages, beyond costs

and attorney's fees, states the following:

> In any suit brought under the provisions of subsection (g)(1)(C) or (D)
> of this section in which the court determines that the agency acted in a
> manner which was intentional or willful, the United States shall be liable
> to the individual in an amount equal to the sum of (A) actual damages
> sustained by the individual as a result of the refusal or failure, but in no
> case shall a person entitled to recovery receive less than the sum of
> $1,000; and (B) the costs of the action together with reasonable attorney

fees as determined by the court.

5 U.S.C.A. § 552a(g)(4)(A)-(B).  As Timberlake's Amended Complaint does not specifically reference these code sections nor could a reasonable reading of the Amended Complaint implicate § 552a(g)(1)(C) or (D),[5] the court finds that § 552a(g)(4) is inapplicable to the instant action.  Therefore, Timberlake is not entitled to money damages.

### B.   Timberlake's Privacy Act "Amendment" Claim

There is no evidence before this court that Timberlake made a request to OPM for amendment of his records.  Furthermore, Timberlake does not respond, in his opposition to Defendant's Motion for Summary Judgment, to OPM's assertion, in the brief in support of its Motion for Summary Judgment, that Timberlake never made

---

[5] 5 U.S.C.A.§ 552a(g)(1) states, in relevant part, that:

Whenever any agency

**(C)** fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; or

**(D)** fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual,

the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

a request to amend his records.[6]  Thus, Timberlake is deemed to have conceded his

claim that OPM failed to correct or amend his medical records.  *See* FED. R. CIV. P.

56(e).  As is required by § 552a(d)(2), a request to amend records must be directed

to the agency in custody of the records in order to state a claim under § 552a(d)(3).

As such a request was never made by Timberlake, OPM's Motion for Summary

Judgment is due to be **GRANTED** as to Timberlake's failure to amend claim brought

under the Privacy Act.

C.      **Timberlake's Freedom of Information Act "Access" Claim**

OPM concedes that Timberlake's Freedom of Information Act claim is timely.

(Def. Brief in Support of its Motion for Summary Judgment, doc. 25, p. 10).  On

November 3, 2003, simultaneous with his request for production of records pursuant

to the Privacy Act, Timberlake made a request to OPM for production of those same

withheld records pursuant to the Freedom of Information Act.  OPM relies on 5

C.F.R. § 294.108(d) which permits OPM to disclose medical records only to a

designated physician, who will then make the ultimate decision as to whether to

disclose those records to the requesting individual.  Because Timberlake is entitled

to receive the records under the Privacy Act, the court need not delve into the

---

[6]The court notes that Timberlake failed to advance any evidence in opposition to OPM's
Motion for Summary Judgment or in support of his own Motion for Summary Judgment.  This
court, having reviewed the complete file, cannot find any evidence that contradicts OPM's
assertion.

question of whether he is entitled to the same documents under the Freedom of Information Act, which is to be construed more broadly than the Privacy Act. *See Bogan v. F.B.I.*, 2005 WL 1367214, *6 (W.D. Wis. 2005) ("if records are requested under both the Privacy Act and the Freedom of Information Act, the requester can gain access to them by showing that they were accessible under one of the two acts") (citing *Shapiro v. Drug Enforcement Admin.,* 762 F.2d 611, 612 (7th Cir. 1985); *Fedrick v. United States Dept. of Justice,* 984 F.Supp. 659 (W.D.N.Y. 1997)).[7] As Timberlake's Freedom of Information Act claim is moot, OPM's Motion for Summary Judgment is due to be **GRANTED** as to that claim.

## IV.   Conclusion

A separate Final Order will be entered consistent with this Memorandum Opinion.

**DONE** this 17th day of January, 2007.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[7]There is no provision for money damages under the Freedom of Information Act. However, a court "may" award reasonable attorney's fees and costs to a plaintiff who prevails under that Act. As the court has the same authority regarding damages, fees, and costs under the Privacy Act, no additional relief would be afforded Timberlake by this court's consideration of his Freedom of Information Act claim.